

**ENTERED**
**05/01/2008**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| IN RE:  §<br>TITANIS, INC.  §<br>  §<br>  DEBTOR  §<br>  §<br>BEN B. FLOYD, TRUSTEE  §<br>  §<br>  PLAINTIFF  §<br>  §<br>VS.  §<br>  §<br>HAROLD PRICE  §<br>  DEFENDANT  § | CASE NO. 05-30548-H5-7<br><br><br><br>ADVERSARY NO. 06-03674 |

## MEMORANDUM OPINION

Before the Court is the complaint of Ben B. Floyd, trustee of the chapter 7 estate of Titanis, Inc., to recover avoidable transfers from Harold Price. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 157. This is a core proceeding.

Titanis, Inc. filed a chapter 11 bankruptcy on January 7, 2005. Titanis, Inc. converted to chapter 7 on April 20, 2005, and Ben B. Floyd was appointed chapter 7 trustee on that date. Harold Price was president of Titanis, Inc. Titanis, Inc. was a subchapter S corporation which provided computer consulting and hosting services.

The trustee seeks to avoid as preferential transfers payments from debtor to Price totaling $44,440.54 as follows:

check no. 1401 dated January 13, 2004, in the amount of $25,000.00
check no. 1402 dated January 13, 2004, in the amount of $7,000.00
check no. 1482 dated April 22, 2004, in the amount of $1,540.54
check no.1551 dated August 23, 2004, in the amount of $8,500.00
check no. 1552 dated August 23, 2004, in the amount of $2,400.00

Bankruptcy Code § 547 provides[1]:

. . . .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

. . . .

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

. . . .

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

11 U.S.C. § 547.

To avoid a transfer made between 90 days and one year before the bankruptcy as preferential, the plaintiff must prove by a preponderance of the evidence, without benefit of a presumption of insolvency, that the debtor was insolvent at the time the preferential transfer occurred. <u>Matter of Lamar Haddox Contractor, Inc.</u>, 40 F.3d 118, 121 (5th Cir. 1994). A corporate debtor is insolvent

---

[1]This adversary proceeding is governed by the Bankruptcy Code as it existed prior to the amendments of BAPCPA.

when the sum of its debts is greater than all of its property, at a fair valuation. 11 U.S.C. § 101(32)(A); Id.

The trustee's accountant testified that debtor was insolvent on the dates of the payments to Price. In making this determination, he testified that he had relied on debtor's balance sheets for December 31st of 2002 and 2003 attached to the company's tax return for 2003, the debtor's bank statements from Sterling Bank, and debtor's schedules. According to the trustee's accountant, debtor's balance sheet for December 31, 2003, shows that debtor was substantially insolvent, with approximately $800,00 in liabilities in excess of assets. To determine that debtor's insolvency had continued to the petition date and, that therefore, debtor had been insolvent on the dates of the transfers to Price, the trustee's accountant testified that he had reviewed debtor's bank records for the time period between December 31, 2002, and the petition date and that nothing had occurred to decrease debtor's insolvency. On cross-examination, he was asked whether he had re-created debtor's balance sheet and replied that as he had debtor's bankruptcy schedules and debtor's 2002 and 2003 balance sheets he had not needed to reconstruct debtor's balance sheet for the period in question or to create a general ledger.

The trustee testified that the debtor had scheduled liabilities of $715,000 which had increased to $1,675,000 in debtor's conversion schedules of which "$1 million plus change" was a debt to Price. The trustee testified that the bar date for filing claims had passed and that the total amount of unsecured claims filed was $557,000.

The trustee testified that debtor had initially scheduled assets valued at $363,000 which had decreased to $207,000 in debtor's conversion schedules. After liquidation of all of debtor's assets, the trustee has on hand a total of $54,770, plus the instant cause of action against Price.

The evidentiary record contains no information concerning debtor's assets and liabilities in 2004. The trustee's accountant testified that he had prepared an expert's report to support his opinion, but the trustee did not offer the report into evidence. The trustee, likewise, did not include in the record the bank statements upon which the trustee's accountant relied in assessing debtor's solvency after December 31, 2003. The trustee did not offer into evidence debtor's schedule E showing debtor's unsecured creditors and the amounts claimed. The trustee did not offer into evidence debtor's schedule B showing the personal property debtor owned on the date of bankruptcy. The only documentary basis in the record upon which the Court can rely in finding that debtor was insolvent on January 13, 2004, April 22, 2004, and August 23, 2004, is debtor's December 31, 2003 balance sheet and 2003 tax return. "While the Debtor's insolvency does not have to be established through documentary evidence, see Porter v. Yukon Nat'l Bank, 866 F.2d 355, 356-57 (10th Cir.1989) (stating that insolvency does not have to be proved by a "thoughtful, well-documented analysis of Debtor's assets and liabilities"), such evidence would have helped the court to determine the fair market value of the assets." Matter of Lamar Haddox Contractor, Inc., 40 F.3d at 122.

Although the Bankruptcy Code's definition of insolvency is commonly referred to as a "balance sheet test," a company's balance sheet may not reflect a "fair valuation." Id. The fair value of property is determined by estimating what the debtor's assets would realize if sold in a prudent manner in current market conditions. Id. A balance sheet, however, shows the book value of assets usually valued at the cost of the property minus accumulated depreciation at the maximum rate allowed by income tax regulations. Id. The Lamar court reversed the lower court's finding of debtor's insolvency holding that such finding was clearly erroneous in the absence of evidence of the fair value of debtor's substantially depreciated property and of the extent of that depreciation on

the critical dates. Id.

According to debtor's balance sheet, on December 31, 2003, debtor's assets, without consideration of accumulated depreciation were valued at $1,148,624. Liabilities on that date, apart from loans from shareholders, totaled $745,819. The Court has no evidence of the fair value of debtor's assets for any point in time. The trustee's accountant's testimony did not reference the fair value of debtor's assets, only the net of assets and liabilities shown on debtor's balance sheet. The value obtained by the trustee for debtor's assets upon liquidation is not indicative of the fair value of debtor's assets as a going concern in 2004. The Court concludes that the trustee has failed to prove that the transfers at issue were made while the debtor was insolvent.

Price contends that the payments are not avoidable because: (1) he made contemporaneous exchanges for new value, (2) he gave the company new value subsequent to the transfers, or (3) the payments were made in the ordinary course of business.

Bankruptcy Code §547 provides defenses to avoidance as follows:

(c) The trustee may not avoid under this section a transfer--

(1) to the extent that such transfer was--

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was--

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

>  (C) made according to ordinary business terms;
>
> . . . .
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor--
>
> (A) not secured by an otherwise unavoidable security interest; and
>
> (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor . . .

11 U.S.C. § 547.

The Court finds that Price has not proven the defense of contemporaneous exchange or the defense of subsequent new value. The Court finds, however, that Price has proven that the payments are not avoidable under the ordinary course of business defense.

The evidence shows that Price made one long term loan to debtor of over $1 million dollars. In addition Price advanced funds to the debtor throughout the year before bankruptcy in order for the debtor to pay payroll. Price testified that he was never repaid for the long term loan and that the transfers that the trustee seeks to avoid in the instant matter are repayments of the short term payroll loans. The Court finds that Price's loans to debtor were made and incurred in the ordinary course of business or financial affairs of the debtor and Price. The only evidence of the repayment terms of Price's payroll loans is from Price. Price testified that he used his personal funds upon which his family depended for the living expenses to fund the payroll loans he made to the company. Price and the debtor agreed that such loans would be repaid immediately as receivables came into the company. The Court finds that debtor's payments on these loans were made in the ordinary course of business or financial affairs of the debtor and the transferee.

To determine whether Price has proven the final element of his defense, that the payments were made according to ordinary business terms, "we compare the credit arrangements between other

similarly situated debtors and creditors in the industry to see whether the payment practices at issue are consistent with what takes place in the industry." In re Gulf City Seafoods, Inc., 296 F.3d 363, 368 (5th Cir.2002). In In re Desktop Engineer Solutions Inc., 30 F.3d 1492 (5th Cir. 1994) (Not selected for publication in the Federal Reporter) (Unpublished opinions issued before January 1, 1996, are precedent. 5th Cir. Local Rule 47.5.3.), the Fifth Circuit upheld as conforming to industry norms, employee financing in the computer industry of both long term loans requiring regular monthly payments and short term "factoring" loans advanced so that debtor could pay computer equipment invoices during the year preceding bankruptcy. Acknowledging the trustee's argument that computer industry norms included floor plan financing and factoring, and not employee financing, and that there was testimony that floor planning was a normal method of financing in the computer industry, the Fifth Circuit held that this did not preclude supplemental financing by an employee in accordance with industry standards. Id. The Court finds that the payments made to Price were made according to ordinary business terms.

In addition to avoidance of the foregoing payments as preferences, the trustee seeks to avoid the foregoing payments and payments totaling $34,357.84 made to Whitney Bank and totaling $10,880.00 made to MBNA as fraudulent transfers.

Bankruptcy Code §548 provides:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 1 year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer

or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured;

11 U.S.C. §548.

Texas law provides for avoidance of fraudulent transfers as follows:

§ 24.005. Transfers Fraudulent as to Present and Future Creditors

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

(b) In determining actual intent under Subsection (a)(1) of this section, consideration may be given, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

>(3) the transfer or obligation was concealed;
>
>(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
>(5) the transfer was of substantially all the debtor's assets;
>
>(6) the debtor absconded;
>
>(7) the debtor removed or concealed assets;
>
>(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
>(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
>(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
>(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. and Com. Code §24.005.

The trustee seeks to avoid the foregoing transfers as fraudulent because they were made to reduce debts for which, the trustee urges, the debtor was not liable. The court credits Price's testimony to the contrary, however, that Titanis, Inc. was obligated for the debts at issue and that the payments were made on indebtednesses whose proceeds were used solely in debtor's operations.

The Court finds that the trustee has not shown by a preponderance of the evidence all elements of his causes of action under 11 U.S.C. § 548 or under Tex. Bus. & Com. Code § 24.005 to avoid fraudulent transfers.

Based on the foregoing, it is

**ORDERED** that Ben B. Floyd, trustee take nothing by way of his complaint brought against Harold Price; it is further

**ORDERED** that a separate judgment shall be entered conforming to this Memorandum Opinion.

Signed this ____ day of May, 2008 at Houston, Texas.

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE